**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL and MARY MCGOLDRICK,  :
          :
    Plaintiffs,   : CIVIL ACTION
          :
  v.         : No. 07-cv-2667
          :
TRUEPOSITION, INC., et al.,   :
          :
    Defendants.   :

**MEMORANDUM and ORDER**

Joyner, J.         March 17, 2009

  Before the Court is Defendants' Motion for Summary Judgment, Plaintiffs' Response in Opposition, and Defendants' Reply thereto.  For the foregoing reasons, we will GRANT IN PART and DENY IN PART.

**BACKGROUND**

  Plaintiffs Mr. and Mrs. McGoldrick are dual citizens of the United States and Ireland and currently reside in Ireland.[1] Defendant TruePosition is a Delaware Corporation doing business in Pennsylvania, with its headquarters in Berwyn, Pennsylvania. Defendant TruePosition, Inc. Amended and Restated 1995 Stock Incentive Plan (the "Plan") was the stock option plan in which

---

[1] As this is a summary judgment motion, we will view the facts in the light most favorable to the non-moving party.  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

1

Mr. McGoldrick participated and Defendant Administration Committee of the Plan (the "Committee") was the Committee which administered the Plan. Finally, Defendant Joseph Sheehan served as President and Chief Operating Office of TruePosition during a portion of Mr. McGoldrick's tenure with the company, including the time at which his employment was terminated.

Plaintiff Mr. McGoldrick began working for TruePosition in September 1997 as its Vice President of Sales. His employment contract included a salary of $150,000.00 a year, a bonus opportunity of 50% of his salary, and a grant of 7,500 options of TruePosition stock. Between 1997 and September 2004, Mr. McGoldrick was an at-will employee mostly working out of his home in Connecticut. In 2002, Mr. McGoldrick was promoted to Vice President of International Sales and in September 2004, Mr. McGoldrick moved to Ireland for an international assignment. Mr. McGoldrick was supervised first by Mr. Kent Sanders, who was residing in Stockholm, and later, by Mr. Joseph Sheehan, who worked in the Berywn, Pennsylvania headquarters. Between 2004 and 2005, multiple permutations of Mr. McGoldrick's foreign assignment contract were exchanged between Mr. McGoldrick and TruePosition. At no time did both parties sign the contract.

In early June 2006, TruePosition offered Mr. McGoldrick, and other current employees, a one-time cash out offer to buy stock options. In early June, Mr. McGoldrick was aware that the offer

2

was forthcoming, but had not seen the offer and was confused about its terms, specifically about whether he would have to sign a non-compete provision.  He, along with colleague Paul Czarnecki, sent an email memo to Mr. Sheehan on June 19, 2006, addressing this concern, as well as other sensitive topics.  See Pl. Exh. 28.  Mr. McGoldrick received the formal cash-out offer, in the form of a letter, in Ireland on June 21, 2006.  Mr. McGoldrick did not immediately accept this offer.  Due to the aforementioned email sent by Mr. McGoldrick to Mr. Sheehan, Mr. Sheehan, on advice of legal counsel, asked Mr. McGoldrick to come to the Berwyn office for a meeting.  On June 29, 2006, after coming to Berwyn to meet with Mr. Sheehan at TruePosition headquarters, Mr. McGoldrick was terminated for failure to follow company directives.  Mr. Sheehan told Mr. McGoldrick that he could not find a copy of a signed foreign assignment contract and, as such, the company was under no obligation to pay for the McGoldrick's to repatriate to the United States.  Additionally, Mr. Sheehan revoked the cash out offer.  See Def. Exh. 21. Within the ninety (90) days that followed, Mr. McGoldrick asked the Committee, consisting of Mark Carelton and John Orr, to allow him to accept the cash out offer.  The Committee declined to entertain Mr. McGoldrick's requests.

Soon after Mr. McGoldrick was terminated, Mrs. McGoldrick called a CIGNA Benefits Representative and was told that the

McGoldrick's CIGNA benefits had been terminated on June 29, 2006.
According to TruePosition's practice, upon the termination of an
employee, TruePosition's human resoures department completes a
Personnel Action Form ("PAF") with the name of the employee and
the date of the action.  This PAF is sent to the payroll
department who inputs the payroll information into a system
maintained by ADP.  This input creates an electronic fee that is
transmitted to Liberty Media, TruePosition's parent company.
Liberty Media sends this information to PayFlex, a third party
administrator responsible for sending COBRA notices to departing
employees.  This Notice is sent to the employees address as it
appears in the ADP system used by TruePosition's payroll.  In
TruePosition's system, Mr. McGoldrick's address was listed as
TruePosition's headquarters in Berwyn, Pennsylvania; hence, the
Notice was sent to TruePosition on or around July 21, 2006.  See
Def. Exh. 23.  TruePosition then contends that the Notice was
forwarded to the McGoldrick's in Ireland because TruePosition
regularly forwarded Mr. McGoldrick's mail to Ireland.  See Pl.
Exh. 21.  Mr. McGoldrick never received the Notice, though he
receive other mail from TruePosition.  On or around January 11,
2007, Mr. and Mrs. McGoldrick received a "Certificate of Group
Health Plan Coverage" from CIGNA, showing that their coverage had
ended on December 31, 2006.  Confused about the dates on the
certificates, Mrs. McGoldrick called CIGNA Benefits and was told

4

that TruePosition had called in the middle of December to modify the policy end date and extend it until December.  Mr. Czarnecki, Mr. McGoldrick's colleague who was also terminated, contends that he did not receive a COBRA notice either.  <u>See</u> Pl. Exh. 11, at 174.

On June 26, 2007, Mr. and Mrs. McGoldrick filed the present action against Defendants on June 26, 2007, in this Court.  This Court has subject matter jurisdiction over the action due to the federal question raised as to the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161, *et seq.* ("COBRA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1132(c)(1) ("ERISA").  Supplemental jurisdiction has been invoked over the remaining state law claims: the Pennsylvania Wage Payment and Collection Law claim and the common law claims of breach of contract, breach of fiduciary duty, and unjust enrichment.

Defendants filed their Motion for Summary Judgment on December 17, 2008, and Plaintiffs responded on January 16, 2009.  Defendants then submitted a Reply on January 30, 2009.

### **STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  An issue is genuine only if there is a sufficient evidentiary basis on which a

reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## DISCUSSION

Defendants move for summary judgment as to all remaining counts of the Amended Complaint, addressed in three categories: (1) Claims related to the cash out offer (Count IX: Unjust Enrichment and Count X: Breach of Fiduciary Duty); (2) Claims related to costs of repatriating to the United States and other personal expenses (Count I and V: Violations of the Pennsylvania Wage Payment and Collection Law; Counts III and VII: Breach of Contract; Counts IV and VIII: Breach of Covenant of Good Faith and Fair Dealing); (3) Claims related to Mr. and Mrs. McGoldrick's COBRA benefits (Count XI: Failure to Provide

6

Notice).   Counts II and VI: Violations of the Delaware Wage
Payment Collection Act have been dismissed per a Stipulation of
Dismissal (Doc. No. 33) and will, accordingly, not be addressed
by this Court.

**I. Claims Related To the Cash Out Offer**

**A. Count IX: Unjust Enrichment**

Plaintiff alleges unjust enrichment due to TruePosition's
revocation of the cash out offer.  Unjust Enrichment is a quasi-
contract remedy.  Such an implied contract in law "imposes a
duty, not as a result of any agreement, whether express or
implied, but in spite of the absence of an agreement when one
party receives an unjust enrichment at the expense of another."
Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 998-999
(3d Cir. 1987), citing  Schott v. Westinghouse Electric Corp.,
436 Pa. 279, 259 A.2d 443 (1969).  In order to show unjust
enrichment, a "claimant must show that the party against whom
recovery is sought either wrongfully secured or passively
received a benefit that would be unconscionable for the party to
retain without compensating the provider."  Hershey, 828 F. 2d at
999, citing Torchia ex rel. Torchia v. Torchia, 346 Pa. Super.
229, 233 (Pa. Super. Ct. 1985).  Otherwise stated, "[t]he
elements of unjust enrichment are 'benefits conferred on
defendant by plaintiff, appreciation of such benefits by
defendant, and acceptance and retention of such benefits under

7

such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" AmeriPro Search, Inc. v. Fleming Steel Co., 2001 PA Super. 325, P10 (Pa. Super. Ct. 2001), quoting Styer v. Hugo, 422 Pa. Super. 262, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  As Mr. McGoldrick has the burden of persuasion at trial on this issue, this Court will examine whether TruePosition has shown that Mr. McGoldrick's evidence is insufficient to carry the elements of the claim.

Mr. McGoldrick's claim of unjust enrichment centers upon past work he has done on behalf of TruePosition and the cash out offer made by TruePosition to Mr. McGoldrick in June 2006. Specifically, Mr. McGoldrick asserts that he conferred a benefit upon TruePosition by nearly securing a lucrative deal with the Saudi Telecom Company – one that, at the end of lengthy patent infringement litigation with the firm that was originally awarded the contract, resulted in a judgment of $45,300,000.00 for TruePosition.  McGoldrick then argues that TruePosition demonstrated its appreciation of McGoldrick's work by offering to cash out his vested stock options.  Finally, McGoldrick argues that it would be inequitable for TruePosition to retain the benefit of the cash out offer because he enriched them through the deal with the Saudi Company.

TruePosition argues that Mr. McGoldrick was simply doing his job by attempting to secure a deal with the Saudi Company.

8

TruePosition notes that this offer was made to all of its current employees, that it was specifically Mr. McGoldrick's job to secure such contracts, and additionally, that he did not, in fact, secure the Saudi contract.   Further, it asserts that the cash out offer was a motivational tool, was an offer revoked before acceptance and was not accepted in the period of time set out in the original offer.[2]   Hence, TruePosition contends that Mr. McGoldrick has not presented evidence of an unjust enrichment claim, in that he has not shown any enrichment to TruePosition or injustice as to Mr. McGoldrick's compensation.

In consideration of the elements of an unjust enrichment claim, this Court fails to see how Mr. McGoldrick's performance of his job has unjustly enriched TruePosition.   Mr. McGoldrick performed his job and was compensated with his salary.   The fact that he was later made a one-time cash out offer with all other current employees does not change the fact that it would not be unconscionable for TruePosition to benefit from the work that they paid him to do.   As in Herbst v. General Accident Ins. Co., No. 97-8085, 1999 U.S. Dist. LEXIS 15807, 1999 WL 820194, at *27 (E.D. Pa. Sept. 30, 1999),

---

[2]TruePosition claims that the terms of this cash out offer were formally communicated to Mr. McGoldrick in a letter dated June 16, 2006, and that he did not accept his offer within thirty days, as laid out in the offer letter. Def. Exh. 16.   Finally, TruePosition contends that the offer to cash out the stock options was revoked upon Mr. McGoldrick's termination from TruePosition on June 29, 2006.   Def. Exh. 20.

> [p]laintiff has not shown that he conferred a benefit
> on defendant that would be unjust for defendant to
> retain or that it would be 'unconscionable' for
> defendant not to further compensate plaintiff for
> some benefit received.  Plaintiff has not shown that
> he did anything more than work to the best of his
> abilities for defendant as he was engaged to do.

Mr. McGoldrick has specifically alleged that the benefit
conferred to TruePosition, the benefit that it would be
unconscionable for them to keep, was that of his almost securing
a contract with the Saudi Company.[3]

McGoldrick relies heavily on Dearlove v. Genzyme Transgenics
Corp., No. 1031, 2003 Phila. Ct. Com. Pl. LEXIS 26, 2003 WL
21544489, at *31-32 (Pa.C.P. July 9, 2003), for his proposition
that revoking the cash out offer could be considered unjust
enrichment.  However, in Dearlove, the plaintiffs were
complaining that their *stock options*, part of their compensation
as employees, had been cancelled, not that a one time cash out
offer to buy back their stock options had been revoked.  The
difference is material because there has been no allegation that
TruePosition took back Mr. McGoldrick's earned compensation for
work that had been performed, i.e. TruePosition did not cancel
his stock options or withhold his salary.  In the present
situation, Mr. McGoldrick still held the stock options that he

---

[3]Specifically, Plaintiff's memorandum of law states, "Mr. McGoldrick
conferred on TruePosition the benefit of a deal with the Saudi Telecom Company
. . . ."  Pl. Brf., 18.

was hoping to cash out in line with TruePosition's offer.[4] TruePosition, therefore, did not "take back" stock options, but revoked its offer to buy Mr. McGoldrick's stock options for cash at a higher price.

The attempt to secure this deal was part of Mr. McGoldrick's job and he has not shown that he did anything other than what he was employed to do.  Hence, construing all factual questions in favor of Mr. McGoldrick, summary judgment is GRANTED and the claim of unjust enrichment is DISMISSED.

## B. Count X: Breach of Fiduciary Duty

Plaintiffs argue that TruePosition owed a fiduciary duty to Mr. McGoldrick when it offered to cash out his stock options and that it breached that duty when it revoked its cash out offer and did not consider his belated request to accept the cash out offer.  Defendants contend that no fiduciary duty was created by the offer because Mr. McGoldrick was an option-holder, not a stock holder, and that the Nonqualified Stock Option Agreement (the "ISO Agreement") specifically stated that no special duty was owed to the participants in the Amended and Restated 1995 Stock Incentive Plan (the "Plan").  Delaware law governs this claim because of the Delaware choice-of-law provision in the Plan and ISO Agreement.

---

[4]Defendants note that that Mr. McGoldrick could have exercised his stock options after his termination, but that he declined to do so because he would have suffered a loss. Def. Brf. 1.

11

Under Delaware law, courts have clearly stated that a
fiduciary duty does not arise until there is an existing property
right and that stock options of employees do not give rise to
such an interest.  McLaughlin v. Cendant Corp. (In re Cendant
Corp. Sec. Litig.), 76 F. Supp. 2d 539, 550 (D.N.J. 1999), citing
Glinert v. Wickes Co., 1990 Del. Ch. LEXIS 42, No. 10407, 1990 WL
34703, at *9 (Del. Ch. Mar. 27, 1990), aff'd, 586 A.2d 1201 (Del.
1990); Powers v. British Vita, P.L.C., 969 F. Supp. 4, 6
(S.D.N.Y. 1997).  "Holders of unexercised stock options merely
have a contractual right to purchase an equitable interest in a
corporation at some later date."  In re Cendant Corp., 76 F.
Supp. 2d at 550, citing Starkman v. Warner Comm., Inc., 671 F.
Supp. 297, 304 (S.D.N.Y. 1987).  Mr. McGoldrick was a stock
option holder and the one-time offer from TruePosition to buy
back the stock options as an employment incentive did not create
a property right in the company.  Even after the cash out offer
was made, Mr. McGoldrick was still a stock option holder and the
offer extended to him did not change his status.  Further, the
Agreement stated that the "optionee shall have no rights as a
stockholder with respect to any shares . . . until certificates
for such shares are issued to the [o]ptionee."  See Def. Exh. 5,
16-17.  Mr. McGoldrick did not have a property interest in the
stock and no fiduciary relationship was created by the offer to
cash out stock options.  "[A] mere expectancy interest does not

12

create a fiduciary relationship.  Before a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must exist." Simons v. Cogan, 549 A.2d 300, 304 (Del. 1988).[5]  As TruePosition did not have a fiduciary duty, they clearly could not have breached such a duty.  Summary judgment is GRANTED as to the Breach of Fiduciary Duty and, thus, Count X is DISMISSED.

## II. Claims Related to Cost of Repatriation

Plaintiffs argue that TruePosition breached its contract with Mr. McGoldrick when it refused to pay repatriation benefits for Mr. McGoldrick and his wife to return to the United States (Counts III, IV) and to reimburse certain personal expenses he purportedly incurred (Count VII, VIII).  TruePosition claims that there is no valid contract between it and Mr. McGoldrick and that, even if there were a contract, Mr. McGoldrick never submitted the expenses for reimbursement in accordance with the contract and is, therefore, not entitled to reimbursement.

### A. Counts III, IV, VII, and VIII: Existence of a Contract

TruePosition's first argument as to Mr. McGoldrick's contract claims is that a contract between the two parties never existed and that, as such, it is entitled to summary judgment as

---

[5] Plaintiffs urge the Court to reject the reasoning of courts who have interpreted Delaware law on this point and, instead, look to an analysis laid out in a law review article.  See Pl. Brf., 23, citing D. Gordon Smith, The Critical Theory of Fiduciary Duty, 55 V. and L. Rev. 1399, 1402 (2002).  We decline to embrace a novel interpretation and rely on the rulings of Delaware courts in this respect.

to all contract claims.  Generally, mutual assent by parties with
the capacity to contract signals contract creation.  Taylor v.
Stanley Co. of America, 305 Pa. 546, 553, 158 A. 157, 159 (Pa.
1932).  Under Pennsylvania law, the test for enforceability of an
agreement is whether both parties have manifested an intention to
be bound by its terms and whether the terms are sufficiently
definite to be specifically enforced.  Channel Home Centers, Div.
of Grace Retail Corp. v. Grossman, 795 F.2d 291, 298-99 (3d Cir.
1986), citing Lombardo v. Gasparini Excavating Co., 385 Pa. 388,
393, 123 A.2d 663, 666 (Pa. 1956); Linnet v. Hitchcock, 324 Pa.
Super. 209, 214, 471 A.2d 537, 540 (Pa. Super. Ct. 1984).
Additionally, consideration is required.  Channel Home Centers,
795 F.2d at 299, citing Stelmack v. Glen Alden Coal Co., 339 Pa.
410, 14 A.2d 127 (1940); Cardamone v. University of Pittsburgh,
253 Pa. Super. 65, 384 A.2d 1228 (1978).  "Applying Pennsylvania
law, then, we must ask (1) whether both parties manifested an
intention to be bound by the agreement; (2) whether the terms of
the agreement are sufficiently definite to be enforced; and (3)
whether there was consideration."  Channel Home Centers, 795 F.2d
at 299.

We first look then to the intention of the parties to be
bound by the agreement.  Defendants contend that, as the contract
was unsigned, enforcing the contract would amount to enforcing
preliminary negotiations.  They assert that there was no mutual

14

intent to sign the contract and cite to emails from Mr.
McGoldrick regarding the contract for this proposition.
Plaintiff, on the other hand, contends that both sides mutually
agreed orally, that this oral agreement was laid out in the
contract, that neither side intended for signatures to be
required and that Mr. McGoldrick was performing his duties under
the contract.  Mr. McGoldrick claims that his emails do not
evidence an intention not to be bound and that the drafts of the
contract and the language of the final draft support his
position.

Clearly there is a dispute as to what the intentions of the
each party were.  "Because the intent of the parties in cases
such as this so often turns upon disputed questions of fact, it
is only the very rare case which can be decided upon pleadings
alone."  <u>Id.</u> at 70.  Additionally, whether the documents that
have the appearance of contracts "may be in fact evidence of mere
negotiation by parties" is generally a question for a fact-
finder.  <u>Goldman v. McShain</u>, 432 Pa. 61, 68-69 (Pa. 1968).  The
parties to this matter clearly dispute each other's intention to
be bound by the agreement and cite evidence in support.  Hence,
on the issue of the existence of the contract, summary judgment
is denied for Counts III, IV, VII and VIII.

**B. Counts III, IV, VII and VIII: Reimbursement for
Repatriation and Expenses**

TruePosition also claims that even if it and Mr. McGoldrick

15

had reached a final agreement, that there is nothing to "reimburse," as Mr. McGoldrick has not yet repatriated per the terms of the alleged contract and never submitted the expenses he is claiming for the various alleged costs he incurred.[6]   Mr. McGoldrick maintains that he and his wife could not financially afford to repatriate, as TruePosition had informed them that it did not believe a contract was in place, and thus, would not reimburse them for the repatriation.  Additionally, Mr. McGoldrick had not submitted the various expenses to TruePosition on the date of his termination and, based on TruePosition's avowal of the alleged contract, has not submitted the expenses following his termination.

TruePosition's argument as to the reimbursement is not logically sound.  Assuming, as TruePosition has for this argument, that the agreement was final and valid, then the fact that Mr. Sheehan, as an agent of TruePosition, specifically told

---

[6]It appears to the Court that following a joint Stipulation of Partial Dismissal (Doc. No. 33) as to several of Mr. McGoldrick's damages claims, that the following claims for reimbursement remain: (1) Five business-class airline tickets for plaintiffs to travel between TruePosition's office in Ireland and the United States (i.e., "Home Leave"); (2) Compensation for quick disposal of automobiles (i.e., "Home Country Automobile Sales Assistance"); (3) Business-related communications media during Mr. McGoldrick's international assignment; (4) Business-related telephone calls; (5) Business-related expenses; (6) Compensation for tax equalization between host and home countries ("Tax Equalization Program"); (7) Tax preparation services through TruePosition's designated accounting agent; (8) Compensation for the devaluation of the Dollar compared to the Euro ("COLA"); (9) Cost of storage for household effect not moved to Ireland.  See Comp., para. 22(a)-(k) and 23(a)-(k).  The joint stipulation of partial dismissal dismissed only: (1) an expense in the amount of $686.96; (2) golf club membership fees; (3) unused vacation time and holidays; and (4) attorney's fees, costs, interest and penalties associated therewith.

Mr. McGoldrick that he would not honor the contract would have breached the contract on TruePosition's part.  In the light most favorable to the non-moving party, we assume that there was a foreign assignment contract.  In the context of this argument, TruePosition cannot rationally assert that Mr. McGoldrick honor the exact wording of the contract after specifically stating that it had no plans of honoring the contract itself.  Hence, we deny summary judgment as to Counts III, IV, VII and VIII.

## C. Counts I and V: Pennsylvania Wage Payment and Collection Law Claims

Mr. McGoldrick claims that, pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"), he has a right to the cost of repatriation and other compensation based on the contract that he had with TruePosition regarding his overseas assignment. TruePosition argues that Mr. McGoldrick does not have standing to sue under WPCL because he is not a Pennsylvania employee, that he cannot recover the cost of repatriation or other expenses because no contract was ever signed and, finally, that Mr. McGoldrick did not comply with the purported contract by properly asking for reimbursement.  This Court has already addressed the existence of a contract and the issue of reimbursement; hence, the Court will analyze only whether Mr. McGoldrick has standing pursuant to the PA WPCL.

### i. Standing for Mr. McGoldrick as an Employee under the WPCL

An employer is defined within the WPCL as "every person,

17

firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a. However, "employee" is not defined in the law, leading to the question of who qualifies as an employee under the WPCL. In this case, it is undisputed that TruePosition is a Pennsylvania employer; the issue for the Court is solely whether Mr. McGoldrick was an employee.

To make a claim pursuant to the WPCL, Mr. McGoldrick must qualify as an "employee" covered by the Law. This Court and others have previously held that "protections contained in the WPCL extend only to those employees based in Pennsylvania." Killian v. McCulloch, 873 F. Supp. 938, 942 (E.D. Pa. 1995), aff'd, 82 F. 3d 406 (3d Cir. 1996); Hides v. Certainteed Corp., No. 94-7349, 1995 U.S. Dist. LEXIS 10849, 1995 WL 458786, at *5 (E.D. Pa. July 26, 1995) ("[I]t seems clear that, under the Wage Payment and Collection Law, the plaintiff must allege that he was employed in the Commonwealth of Pennsylvania."); Tomlinson v. Checkpoint Sys., No. 06-2205, 2008 U.S. Dist. LEXIS 5463, 2008 WL 219217, at *24-26 (E.D. Pa. Jan. 25, 2008). Since our decision in Killian, there have been a number Pennsylvania cases where protections of the WPCL have been extended to those working outside of Pennsylvania. These were instance where the employee's contracts with their employers contained Pennsylvania

choice of law provisions and/or Pennsylvania forum selection clauses.  See Crites v. Hoogovens Tech. Servs., Inc., 43 Pa. D.& C.4th 449, 452-56 (Pa.C.P. 2000); Synesiou v. DesignToMarket, No. 01-5358, 2002 U.S. Dist. LEXIS 5687, 2002 WL 501494, at *3 (E.D. Pa. April 3, 2002).  In the present case, there is no Pennsylvania choice of law provision or forum selection clause contained in Mr. McGoldrick's alleged contract.  Additionally, it is unclear whether Mr. McGoldrick was technically working inside or outside of Pennsylvania.  Hence, this Court is left to determine, absent any choice of law or forum selection clause, whether Mr. McGoldrick was based in Pennsylvania for purposes of the WPCL.

This question has prompted a full review of how courts have dealt with the issue.  After a exhaustive search, this Court has not found any case which definitively articulates the definition of an employee based in Pennsylvania under the WPCL or addresses the exact factual situation with which the Court is now presented.  Each past case has involved plaintiffs who were explicitly either working inside or outside of Pennsylvania and, hence, courts have not been faced with how to determine, in less definitive situations, whether a person was "working" in the Commonwealth for purposes of the statute.  Hence, this Court is now presented with a novel issue for review: how to determine whether an employee is "based in Pennsylvania" for purposes of

19

the WPCL, absent a choice of law or forum selection clause.  As
no Pennsylvania state courts has ruled on this issue, we will
attempt to predict how Pennsylvania courts would address this
definition.

As we will review, both federal and state courts have
addressed numerous permutations of this situation that aid us in
determining how to define an "employee's" status.[7]  In our
decision in Killian, in 1995, we directly considered the issue of
whether a employee not based in Pennsylvania could avail himself
of WPCL protections and determined that he could not.  In so
deciding, we reviewed the scant legislative history of the WPCL
and were guided by prior decisions of federal and state courts as
to the WPCL's purpose.  Killian, 873 F. Supp. at 942, citing
Tener v. Hoag, 697 F. Supp. 196, 197 (W.D. Pa. 1988); Sendi v.
NCR Comten, Inc., 619 F. Supp. 1577, 1579 (E.D. Pa. 1985); Ward
v. Whalen, 18 Pa. D. & C. 3d 710, 714 (C.P. Allegheny County
1981); Laborers Combined Funds v. Mattei, 359 Pa. Super. 399, 518
A. 2d 1296, 1299 (1986).  We determined that the purpose of the
law was "primarily to protect employees."  Killian, 873 F. Supp
at 942.  We further concluded that "[t]he legislature has a

---

[7]Plaintiffs cite to Hirsch v. EPL Techs., Inc., 2006 PA Super 293, p10-
11 (Pa. Super. Ct. 2006), and Morin v. Brassington, 871 A.2d 844, 849 (Pa.
Super. Ct. 2005), to trace the definition of employee in Pennsylvania.  The
courts in these cases dealt more directly with the questions of who qualifies
as an employee as opposed to an employer or an independent contractor, not
whether an employee could be covered under the WPCL if he or she worked out of
state.  In this instance, Mr. McGoldrick's status as an employee is not in
question, only his status as a Pennsylvania employee.

strong interest in enacting legislation to protect those who work in the Commonwealth, but has almost no interest in extending that protection to those who work outside Pennsylvania." Id.  Hence, we reasoned that only those employees based in Pennsylvania should qualify for protections.  Our decision in "Killian has been re-affirmed, distinguished and rejected" over the past fourteen years.  Vengulekar v. Silverline Tech., Ltd., 220 F.R.D. 222, 231 (S.D.N.Y. November 24, 2003).

Following Killian, multiple courts in the Eastern District of Pennsylvania relied upon the decision and denied standing to persons who were explicitly working outside of the Commonwealth of Pennsylvania.  See Hides, 1995 U.S. Dist. LEXIS at *4-6 ("[I]t seems clear that, in order to state a claim under the Wage Payment and Collection Law, the plaintiff must allege that he was employed in the Commonwealth of Pennsylvania. . . . In plaintiff's response . . . , he states that he 'both lived and worked outside of Pennsylvania.' Thus, plaintiff has not stated a cause of action under WPCL . . . ."); Bunnion v. Conrail, No. 97-4877, 1998 U.S. Dist. LEXIS 7727, 1998 WL 372644, at *32-34 (E.D. Pa. May 14, 1998) (following the reasoning of Killian and denying class action certification for lack of commonality and typicality in the employees' work locations because not all representative employees had averred that they worked in Pennsylvania). However, in a case whose facts most resemble the facts in this

case, a court in our district found, in ruling on a motion to dismiss, that "something less than full-time in-state employment can trigger the WPCL protections."  Eastland v. DuPont, No. 96-2312, 1996 U.S. Dist. LEXIS 10360, 1996 WL 421940, at *10 (E.D. Pa. July 23, 1996).[8]

In 2000, the Common Pleas Court of Allegheny County addressed the issue for the first time and criticized this Court's conclusion in Killian as to the *sole* purpose of the WPCL. Crites v. Hoogovens Technical Services, 2000 Pa. D. & C.4th 449, 455 (C.P. Ct. of Allegheny County 2000).  The Common Pleas Court agreed that protection of employees in Pennsylvania was one purpose of the law, but added that "[b]oth the broad definition of 'employers' and the array of remedies available against them indicate a legislative intent to punish wayward employers and thereby to discourage them from failing to pay wages."  Id. Hence, it concluded that a "co-equal purpose of the statute [was] to allow for punishment of recalcitrant employers. . . ."  Id. In Crites, the plaintiff worked outside of Pennsylvania for a Pennsylvania employer and had Pennsylvania choice of law and

_____

[8]The plaintiff in Eastland was a personal advisor to Mr. Dupont, a Pennsylvania resident, and performed duties for Mr. DuPont both inside of and outside of Pennsylvania.  Eastland, 1996 U.S. Dist. LEXIS, at *11-12. Plaintiff was not a resident of Pennsylvania.  Id.  The court stated, "Eastland correctly points out that Killian does not address 'whether the Wage Law applies to an employee with numerous Pennsylvania work contacts who opened an out-of-state office at the request of his Pennsylvania employer.'"  Id. at *13, citing Pl. Brf., p. 8.  As the Mr. Eastland's Complaint did not specify where he performed the tasks or how much time he spent in Pennsylvania, the court declined to dismiss the count.  Id. at *13-14.  The case later settled before any more instructive rulings.

forum selection clauses in his contract.  The Court considered the second purpose of the statute and the fact that the plaintiff would be without a state remedy if he could not bring his claim under WPCL due to the choice of law provision in the contract and allowed him to proceed.  Hence, the Court held that in instances where an employee has a Pennsylvania choice of law provision and his employer is in Pennsylvania, that he then has standing to sue under WPCL even when he lives and works outside of the state. Finally, the court appeared to suggest that a Pennsylvania resident working outside of the Commonwealth should also be covered.  Id. at *13, n. 6 ("[W]e believe also that, regardless of where in the world a Pennsylvania resident happens to work, he or she should always be able to bring an action in Pennsylvania against a Pennsylvania-based employer pursuant to the WPCL.  To the extent Killian and its progeny are inconsistent with this observation, we believe they are incorrect.").

Citing to Crites, the court in Synesiou, 2002 U.S. Dist. LEXIS at *7-10, used similar reasoning in providing protections to the plaintiff.  The court weighed the fact that the plaintiff in that case could be "effectively out of court" because of the Pennsylvania choice of law provision in his employment contract and held that a non-resident with a Pennsylvania choice of law provision could be an "employee" under the WPCL.  Id. at 8.  In a slightly nuanced version of these facts, the court in Tucci v.

23

Kelco Aps & Lehman Bros., Inc., No. 02-1765, 2002 U.S. Dist. LEXIS 19232, 2002 WL 31261054 (E.D. Pa. October 6, 2002), found that a plaintiff working in Delaware for a Delaware company with a Delaware choice of law provision in his contract was not an "employee" under the PA WPCL, even though he resided in Pennsylvania, received his checks in Pennsylvania and occasionally worked from home.  Id. at *7-8.  The court based their decision on the location of the employer and the choice of law provisions, citing Synesiou in support.  Finally, most recently, in Tomlinson, the Court, following the reasoning in Killian, denied standing to a Pennsylvania resident who was employed by an out-of-state employer whose positions were based out-of-state.  Tomlinson, 2008 U.S. Dist. LEXIS at *24-25.  The Court found that the plaintiff had no "professional responsibilities on behalf of Checkpoint in Pennsylvania" and that mere residence in Pennsylvania would not trigger protection. Id. at *26.

In this context, we must now determine whether an employee who worked only partly in Pennsylvania is "based in Pennsylvania" for purposes of the WPCL, absent a choice of law or forum selection clause.  We first acknowledge the dual-purpose behind the act: to protect Pennsylvania employees and punish recalcitrant Pennsylvania employers.  Killian, 873 F. Supp. at 942; Crites, 2000 Pa. D. & C.4th at 455.  In consideration of the

24

analyses surrounding employees and the dual-purposes of the law,
this Court has gleaned the following relevant considerations as
to the employees to be protected:(1) Employer's headquarters; (2)
Employee's physical presence working in Pennsylvania; (3) Extent
of employee's contact with Pennsylvania employer (i.e. reporting,
direction, supervision, hiring, assignment, termination); (4)
Employee's residence; (5) Employee's ability to bring his claim
in another forum.

We apply these considerations to Mr. McGoldrick's employment
situation:

(1) Employer's Location: Though incorporated in Delaware,
TruePosition is a Pennsylvania employer with its headquarters in
Berywn, PA.

(2) Employee's physical presence working in Pennsylvania: Mr.
McGoldrick worked physically on assignment in Ireland from
September 2004 until June 2006.  However he returned to and
worked in Pennsylvania "from time to time" when he was required
by his employer.  Generally he returned to attend business
meetings and/or conferences in Berwyn, PA.  Pl. Brf. 36.

(3) Extent of employee's direct contact with Pennsylvania
employer: Mr. McGoldrick was assigned to move to Ireland by
TruePosition in 2004.  Mr. McGoldrick moved there exclusively to
work for TruePosition.  TruePosition does not have an office in
Ireland and, hence, he reported to TruePosition staff elsewhere

and has been supervised since Spring 2006 directly from the
Pennsylvania office.  He regularly communicated with Mr. Sheehan,
whom he regarded as his supervisor, as well as other TruePosition
employees in Pennsylvania over email and phone.  Finally, he was
terminated in Pennsylvania when he returned to the Berywn
headquarters in 2006 to meet with his supervisor.

(4) Employee's residence: Mr. McGoldrick was living on assignment
in Ireland at the time in question.

(5) Employee's ability to bring the claim in another forum: As
Mr. McGoldrick was living overseas, there is clearly no parallel
state wage act under which he could seek protection.
Additionally, as stated, there is no choice of law or forum
selection clause in his contract.  Hence, if no remedy is
provided through the PA WPCL, he may "effectively be out of
court."  Synesiou, 2002 U.S. Dist. LEXIS at *7-10.

    In balancing these factors, we find that based on
TruePosition's status as a Pennsylvania employer, Mr.
McGoldrick's work obligations in Pennsylvania, Mr. McGoldrick's
assignment and direct supervision from Pennsylvania and the
possibility that he could be without a forum for his wage claim,
Mr. McGoldrick is an employee for purposes of the WPCL and is
entitled to its protections.

    Finally, this Court recognizes that for a PA WPCL claim,
plaintiffs must have a valid employment agreement.  <u>See</u>

Tomlinson, 2008 U.S. Dist. LEXIS at *23 ("[I]f a court does not find that a plaintiff had a valid contract with a defendant employer, then the WPCL will not apply.  Without a valid employment contract . . . Plaintiff cannot pursue a claim under the WPCL.").  This Court has already addressed TruePosition's contention that a contract was never made in Part II(A) and has found that issues of material fact remain.  Similarly, this Court has already held that it will not dismiss the contract claims because Mr. McGoldrick did not submit the expenses for reimbursement after TruePosition notified him that they would not honor the alleged contract.  Hence, we decline to grant summary judgment as to the Counts I and V: PA WPCL claims.

## III. Count XI: COBRA Claims

### A. Statutory Notice Requirement Claim

Pursuant to COBRA, 29 U.S.C. §§1161, *et seq.*, and ERISA, 29 U.S.C. § 1132(c) (1), TruePosition was required to give all qualified beneficiaries notice of their rights under COBRA upon Mr. McGoldrick's termination, a qualifying event.  Plaintiffs allege, against both TruePosition and CIGNA International/CIGNA Benefits, that this notice was never sent from the Berwyn, Pennsylvania office to Ireland and that material facts remain.  Defendants maintain that evidence shows that the COBRA notice was sent to Mr. and Mrs. McGoldrick in Ireland.

To satisfy the COBRA notice requirements, an employer must make a good faith effort to notify all qualified beneficiaries of their rights under COBRA upon a qualifying event.[9]  29 U.S.C. § 1166(a).  As defendants note, the employer does not have to prove that the notice was received, only that it was sent.  Though the Third Circuit has not spoken directly to the issue, in Williams v. New Castle County, 970 F.2d 1260, 1265 (3d Cir. 1992), the Court quoted the October 1985 COBRA Congressional Conference Committee, saying, "'employers are required to operate in good faith compliance with a reasonable interpretation' of the substantive rules and notice requirements.  The committee went on to point out that they 'intend that notice by mail to the qualified beneficiary's last known address is to be adequate . . . .'" Williams, 970 F.2d at 1265, citing H.R. Rep. No. 453, 99th Cong., 1st Sess. 563.  In this situation, evidence shows that a notice from Liberty Media was sent to the Berywn office.  The Director of Human Resources, Steve Picciocchi, has stated that "TruePosition regularly forwarded mail addressed to Mr. McGoldrick to his address in Ireland."  Def. Exh. 21, p. 2.  Hence, the defendants' only evidence that the notice from Liberty Media was sent to Mr. McGoldrick in Ireland is the declaration of Mr. Picciocchi.  Mr. Picciocchi's affidavit is not specific as to

---

[9]The Court notes, however, that one notice sent to both of the McGoldrick's would have satisfied the requirement.

the COBRA notice.

The McGoldrick's claim that they never received the notice, that defendants never sent it and that there were irregularities regarding dates of coverage when they contacted CIGNA. Plaintiffs submit a calendar noting a call from CIGNA as to modified ending dates of the coverage and assert that they were told differing end dates when they contacted CIGNA personally. Defendants point to several cases in which employers were able to show that the notice was sent by a standard operating procedure. See Keegan v. Bloomingdale's, Inc., 992 F.Supp. 974, 977 (N.D. Ill. 1998) (finding that defendants provided "affidavits from several employees explaining in detail the standard office procedures for generating and mailing COBRA notifications, their paper trail for Plaintiff's letter up to the point of printing, and a copy of the letter" to prove that it had been sent); Vanderhoof v. Life Extension Inst., 988 F.Supp. 507, 518 (D.N.J. 1997) (holding that defendants demonstrated that "defendants' benefits administrator, prepared and mailed the requisite COBRA letter to [Plaintiff], with a copy mailed to . . . a vice-president of defendants. The copy to [the vice-president] was received at [employer's] headquarters via regular mail for inclusion in plaintiff's personnel file."); Roberts v. National Health Corp., 963 F.Supp. 512, 514-45 (D.S.C. 1997) (dismissing a notification claim on summary judgment because "[t]he

employer/administrator provided affidavits and business records to show that it mailed a COBRA letter."). However, in each of these cases, the employer was able to show that the notice had been sent through computer printouts, firm company procedures of mailings, and/or affidavits as to a specific notice. Additionally, unlike in the present case, the plaintiffs in these actions generally claimed only that they had received notice without any supporting documentation.

It is TruePosition's burden at trial to show that the notice was sent and summary judgment is granted only where no reasonable jury could find to the contrary. Stanziale v. Jargoswky, 200 F.3d 101, 107-08 (3d. Cir. 2000). In light of these questions of material fact as to the sending of the notice, we decline to grant summary judgment as to Count XI.

**B. Mrs. McGoldrick's Standing to Assert Statutory Penalties**

Defendants assert that Mrs. McGoldrick does not have standing to make a separate claim for statutory penalties under COBRA and ERISA because she is a beneficiary, and not a participant, under the medical benefit plan. Plaintiffs argue that, as a beneficiary, Mrs. McGoldrick has standing to assert the claim and would be entitled to statutory penalties for violations of COBRA's notice provision.

Pursuant to 29 U.S.C. § 1132(c) (1),

  Any administrator (A) who fails to meet the [notification] requirements of paragraph . . . (4) of

section 1166 of this title . . . with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

Defendants urge this Court to follow a holding from the Eleventh Circuit in which statutory penalties could not be separately awarded to a beneficiary who was not a participant. See Wright v. Hanna Steel Corporation, 270 F.3d 1336, 1343-44 (11th Cir. 2001).  However, the plaintiffs look to a case from the Seventh Circuit where the Court awarded statutory penalties to solely a beneficiary.  See  Mlsa v. United Communications, Inc., 41 F.3d 1124 (7th Cir. 1994).  Finally, defendants and plaintiffs cite to seemingly contradictory opinions from the District of Puerto Rico, one of which cited to Wright, denying penalties for both participant and beneficiary, and the other, which awarded statutory penalties to an employee and beneficiary son separately.  Compare Curbelo-Rosario v. Instituto de Banca y Comercio, Inc., 248 F.Supp.2d 26, 31 (D.P.R. 2003) and Torres-Negron, et al., v. Rammallo, 203 F. Supp. 2d 120 (D.P.R. 2002). None of these cases is binding upon this Court, but the Third Circuit has not spoken directly to this issue.  The Third Circuit

31

has, however, spoken to the purpose behind the inaction of ERISA

and the statutory penalties, saying,

> Allowing an injured beneficiary recourse through the
> courts is, furthermore, essential to fulfilling the
> purpose of ERISA. In the words of Justice Brennan,
> the fundamental purpose of the statute is the
> 'enforcement of strict fiduciary standards of care
> in the administration of all aspects of pension
> plans and promotion of the best interests of
> participants and beneficiaries.'

Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d

1292, 1300 (3d Cir. 1993), quoting Massachusetts Mutual Life Ins.

Co. v. Russell, 473 U.S. 134, 158, 105 S. Ct. 3085 (1985).   The

Third Circuit has made it clear that a beneficiary is protected

pursuant to ERISA and the statute makes it clear that "a

participant or beneficiary . . . may in the court's discretion be

personally liable to such participant or beneficiary in the

amount of up to $ 100 a day from the date of such failure or

refusal."  29 U.S.C. §1132(c)(1).  Under the defendant's view, a

sole beneficiary suing for lack of notice would not be able to

recover a statutory penalty and the recourse promised in 29

U.S.C. §1132(c)(1)(A) would be denied.  Hence, we decline to rule

out the possibility of separate statutory penalties in a

situation, like the present one, where the McGoldrick's, both

beneficiaries under the Plan, argue that TruePosition did not

make a good faith attempt to notify either of them.  Accordingly,

we decline to grant summary judgment as to Mrs. McGoldrick's

standing in Count XI.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
MICHAEL and MARY MCGOLDRICK,       :
                                   :
             Plaintiffs,           :    CIVIL ACTION
                                   :
        v.                         :    No. 07-cv-2667
                                   :
TRUEPOSITION, INC., et al.,        :
                                   :
             Defendants.           :
```

<u>**ORDER**</u>

AND NOW, this    17th    day of March, 2009, upon
consideration of Defendants' Motion for Summary Judgment (Doc.
No. 30), Plaintiffs' Response in Opposition (Doc. No. 31), and
Defendants' Reply thereto (Doc. No. 32), it is ORDERED that the
Motion is GRANTED IN PART and DENIED IN PART.  As to Counts IX
and X, Summary Judgment is GRANTED and the counts are DISMISSED.
Summary Judgment is DENIED as to all other remaining counts.  It
is further ORDERED that Defendant TruePosition, Inc. Amended and
Restated 1995 Stock Incentive Plan (the "Plan") and Defendant
Administration Committee of the Plan (the "Committee") are
DISMISSED from this action, as all claims against them, Counts IX
and X, have been DISMISSED.

                              BY THE COURT:


                              s/J. Curtis Joyner
                              J. CURTIS JOYNER, J.